146 So.2d 581 (1962)
Tommy Joe MALONEY, Appellant,
v.
STATE of Florida, Appellee.
No. 3153.
District Court of Appeal of Florida. Second District.
October 31, 1962.
Joseph G. Spicola, Jr., Public Defender and Robert W. Rollins, Asst. Public Defender, of Hillsborough County, for appellant.
Richard W. Ervin, Atty. Gen., Tallahassee, and Robert R. Crittenden Asst. Atty. Gen., Lakeland for appellee.
WHITE, Judge.
Tommy Joe Maloney appeals his conviction of having possession or control of certain weapons in violation of Fla. Stat. § 790.23, F.S.A., a law enacted in 1955.[1] The salient facts as set forth in the succeeding paragraph are substantially uncontroverted.
On the evening of September 11, 1961 two deputy sheriffs observed a burning automobile on State Road 60. The automobile came to a stop and three men, including the defendant, emerged. The defendant was the driver. After the fire was extinguished the automobile was towed to a garage where the attendant discovered a loaded sawed-off shotgun under the front seat and a loaded .22 caliber pistol in the glove compartment. Extra shells for both weapons were also found in the glove compartment. The automobile was owned by one William T. Barnes who was not one of the occupants at the time in question. The automobile bore an improper license tag, No. 3-84213. The proper tag, No. 14-7930, was found on the rear floor of the vehicle. The defendant stated to a deputy that he found the former tag and substituted it for the proper *582 tag. He further stated that he had "straight-wired" the ignition in order to operate the automobile without a key.
Informations were filed charging the defendant with unlawful care, custody, possession or control of the described weapons under the statute, supra, and with operating a motor vehicle without the owner's consent. A consolidated non-jury trial was held pursuant to agreement of the defendant, and it was stipulated that the defendant was a felon within the purview of the statute. The owner of the automobile testified that he had not consented to its use by the defendant. He also testified that he did not own a sawed-off shotgun or a .22 caliber pistol and that neither of such weapons was in the automobile the last time he saw it. Deputy Sheriff William Terrell testified that he asked the defendant if he knew the weapons were in the automobile and that the defendant answered in the negative.
The only witnesses for the defense were the wife of the defendant, whose testimony was of no significance, and one James Roebuck who was one of the occupants of the automobile. James Roebuck testified that the shotgun belonged to him, the witness, and that the pistol belonged to the defendant's brother who was the third occupant of the automobile. The witness explained that he always kept the shotgun loaded and had sawed off the end because he could shoot birds better that way. He explained that the shotgun was in the automobile because the defendant's brother "knowed a guy that wanted to buy it, so we were going to take it over there," and they also were going to sell the pistol. On the other hand, Deputy William Terrell testified that the defendant told him that the group were on their way to Riverview to visit a friend. Witness James Roebuck admitted that prior to the trial he had denied ownership of the shotgun and had also denied knowledge of the presence of the weapons in the automobile.
The defendant was found guilty as charged with respect to the weapons and, after denial of motion for a new trial, he was adjudged guilty. This appeal challenges the sufficiency of the evidence to sustain the conviction, urging that the defendant was merely one of three occupants of the automobile and that the evidence clearly failed to show beyond a reasonable doubt that the defendant knew of the presence of the weapons or that such weapons were in his "care, custody, possession or control" as contemplated by the statute. The state on the other hand, takes the position that it is not necessary to show actual manucaption or physical contact with the weapons and that the evidence was fully sufficient for the court to find that the defendant knowingly had said weapons in his care, custody, possession or control. The defendant was found not guilty of operating the automobile without the owner's consent.
The interpretation or meaning of "possession" and related words and phrases may vary with the import of the statute involved. Take for example § 790.05 F.S.A., another subsection which was first enacted as Chapter 4147, Laws of Florida, 1893, amended by Chapter 4928, Laws of Florida, 1901. That section makes it unlawful for one to carry about with him or have in his manual possession certain described firearms without having secured a license. In Watson v. Stone, 1941, 148 Fla. 516, 4 So.2d 700, the court construed the statute and logically defined the phrase "carry about with him" and the word "possession" as there employed:
"* * * The burden of proof was on the State to show that the petitioner carried a pistol on his person around with him, or to establish that he had a pistol in his manual possession. The absence of the words `on' and `about' [from the statute] * * * distinguishes it from statutes of other jurisdictions making it unlawful for the weapon of the defendant to be on, under or behind the seat, cushion, door, side floor or pockets of an automobile. * * *"
*583 As previously noted the statute here involved is the quoted § 790.23 F.S.A. pertaining to certain weapons in relation to convicted felons. The statute is of comparatively recent enactment and the requisite of "care, custody, possession or control" of the specified type of weapons does not appear to have been defined in statutory context by any Florida appellate court. We therefore look to relevant decisions in other jurisdictions and to a Florida decision cited by respective counsel which may be helpful in construing the language used in the instant statute.
We shall first discuss the Florida decision which is Reynolds v. State, 1926, 92 Fla. 1038, 111 So. 285. In that case several deputy sheriffs were patrolling a public highway in Lakeland looking for an automobile they had reason to believe was transporting intoxicating liquor. The expected automobile approached driven by the defendant and occupied by several other individuals. The defendant refused to stop but on the contrary drove rapidly into the country pursued by the officers. The defendant's automobile finally came to a stop in a country lane and several demijohns were removed and deposited in some bushes along the lane. This was observed by the pursuing officers who recovered the demijohns and apprehended the defendant. The demijohns contained intoxicating liquor. The defendant, in appealing his conviction of unlawful possession of the liquor, contended that the evidence of his possession was insufficient to support the verdict. In affirming the conviction the Supreme Court of Florida, speaking through Justice Strum, said:
"In offenses of this character, `possession' is usually defined as having personal charge of or exercising the right of ownership, management, or control over the liquor in question. * * * To constitute possession, there need not necessarily be an actual manucaption of the liquor, nor is it necessary that it be otherwise actually upon the person of the accused. * * * There must, however, be a conscious and substantial possession by the accused, as distinguished from a mere involuntary or superficial possession. * * * That the accused was in conscious and substantial possession of liquor found upon premises or in a vehicle under his domination or control may be lawfully inferred from the surrounding circumstances, especially in the absence of contrary or exculpatory evidence. * * *" (Emphasis added.)
From the foregoing quotation the defendant here argues the insufficiency of the evidence to establish conscious and substantial possession. In rejecting this contention we first emphasize that the statute here involved supplements "possession" with the additional words "care, custody * * * or control." In New York "possession", used as a single definitive in a statute prohibiting possession of a firearm by one previously convicted of a crime, has been held not dependent upon a physical handling of the prohibited weapon. People v. Furey, 13 A.D.2d 412, 217 N.Y.S.2d 189, 192. In People v. Russo, 278 App.Div. 98, 103 N.Y.S.2d 603, 606, another New York decision, the court observed that "possession * * * is a knowing and voluntary possession `which places the weapon within the immediate control and reach of the accused * * * where it is available for unlawful use if he so desires.'" See also State v. Gaudin, 152 Me. 13, 120 A.2d 823 and State v. Labato, 7 N.J. 137, 80 A.2d 617, 622. It has been previously noted that knowledge on the part of the defendant may be inferred from the surrounding circumstances. One of the strongest of such circumstances is that defense witness Roebuck, being also a companion of the defendant, testified that he put the shotgun under the front seat of the car and that "they" were going out to sell the guns.
The court determined that the circumstances in this case were inconsistent with the hypothesis of innocence. The conclusion is that the defendant was given a fair *584 trial according to law and that the court did not err in finding and adjudging him guilty.
Affirmed.
SHANNON, C.J., and SMITH, J., concur.
NOTES
[1] "(1) It shall be unlawful for any person who has been convicted of a felony to own or to have in his care, custody, possession or control any pistol, sawed-off rifle or sawed-off shotgun. A sawed-off rifle or sawed-off shotgun is defined for the purposes of this section as being any rifle or shotgun with a caliber greater than twenty-two caliber and with a barrel less than eighteen inches long.

"(2) This section shall not apply to a person having been convicted of a felony whose civil rights have been restored.
"(3) Any person convicted of violating this section shall be guilty of a felony, and upon conviction shall be punished by imprisonment in the state prison for not more than ten years." (Emphasis added.)