458 So.2d 293 (1984)
Harry MUNGIN, Appellant,
v.
STATE of Florida, Appellee.
No. AT-468.
District Court of Appeal of Florida, First District.
April 6, 1984.
On Rehearing and Rehearing November 9, 1984.
*294 James M. Donohoe, Jr., Gainesville, for appellant.
Jim Smith, Atty. Gen., and Wallace E. Allbritton, Asst. Atty. Gen., Tallahassee, for appellee.
On Rehearing and Rehearing En Banc November 9, 1984.
ERVIN, Chief Judge.
Mungin appeals his conviction of inmate possession of a weapon in violation of Section 944.47(1)(c), Florida Statutes,[1] following a jury trial at which the trial court excluded from admission into evidence proffered defense testimony relating to the defenses of self-defense, necessity and duress. We reverse, finding that such testimony was improperly withheld from the jury's consideration.
At trial, Correctional Officer Smith testified that while he was on duty at Florida State Prison on December 11, 1982, he observed an altercation between inmates Mungin and Williams. Smith grabbed Williams, who to him appeared to be the aggressor, and then turned to look at Mungin, standing approximately three or four feet away, holding a homemade knife. At that time Correctional Officers Marshall and Shaw arrived, and Marshall instructed Mungin to hand him the knife. Mungin responded that he would do so as soon as the room was cleared of inmates. After Smith had led Williams out, he saw Mungin hand the knife to Marshall.
At trial, when counsel for the defense attempted to question Smith about any problems that might have occurred between the two inmates on the day preceding the incident, the state entered an objection on grounds of irrelevancy, which was sustained by the trial court. When the same objection was made by the state to testimony by Mungin on the subject of recent prior disputes with Williams, a proffer of the following facts was made by defense counsel outside the jury's presence: On December the tenth, Mungin saw Williams harassing his friend, another inmate named Stark. In an attempt to end the dispute, Mungin told Williams that he had money and would pay the debt. Williams' response was to stab at Mungin twice with a knife, missing both times. Mungin testified that the attempted assault upset him greatly because he had nearly *295 died of a stab wound to his throat, inflicted a month earlier. Fearful of another such attack, he tried, unsuccessfully, to obtain an apology from Williams and settle the matter. The following day, as Mungin entered the day-room, Williams stood up, approached him, reached under his shirt and seized a knife, which he used again to attack him. During the ensuing scuffle, and while Williams' friends were throwing chairs at Mungin, the knife was dropped and Mungin retrieved it. At that point Correctional Officer Smith came in and subdued Williams. Mungin at first refused to surrender the knife until the other hostile inmates were removed. On this proffer, the trial court sustained the state's objection, explaining that such a defense was not justification for Mungin's possession of a deadly weapon. Defense counsel then stated for the record that had the proffer been allowed, Stark and another inmate would have been called to the stand to corroborate Mungin's testimony. He then requested that such additional testimony, as well as Officer Smith's proposed testimony relating to the prior dispute, be proffered. The trial court replied that defense counsel should consider it proffered.
Under the unique circumstances presented by this case, we hold that the trial court erred in excluding the proffered testimony. The determination of whether the accused committed the offense charged, acting in his own defense, is a matter for consideration by the jury, see, e.g., Hall v. State, 136 Fla. 644, 187 So. 392 (Fla. 1939); Stevens v. State, 397 So.2d 324 (Fla. 5th DCA 1981), not the trial judge. The jury was entitled to consider the testimony concerning the recent events which led to Mungin's temporary possession of the knife. Such testimony clearly tended to demonstrate that Mungin acted in self-defense. See, e.g., Moyers v. State, 400 So.2d 769 (Fla. 1st DCA 1981), affirmed State v. Moyers, 406 So.2d 1120 (Fla. 1981); Wright v. State, 442 So.2d 1058 (Fla. 1st DCA 1983). It, moreover, could have established to the jury's satisfaction Mungin's well-founded fear that if he had not used all available resources at his disposal to remove the knife from the hands of his aggressor, he might have suffered death or great bodily harm.
In so concluding we have not overlooked our prior opinion in Carter v. State, 312 So.2d 494 (Fla. 1st DCA 1975), holding that the defense of necessity is not available to one charged with possession of a deadly weapon in his capacity as a prisoner, even though its possession is for the sole purpose of defending himself against other inmates. It does not appear from the court's very brief opinion in Carter that the inmate came about his possession of the knife as the result of his forced removal of it from his aggressor while defending himself against the use of immediate, deadly force. Had the facts in the case at bar demonstrated that Mungin had sufficient time to reflect on the consequences of possession, so that he caused to have manufactured or imported into the prison system the knife in question, we consider that the Carter interpretation of section 944.47(1)(c) would be fully applicable in the instant case. The possession of the weapon under such circumstances would be clearly at variance with the legislative purpose expressed in the statute to bar the introduction of deadly weapons into the grounds of the state penal institutions. We do not consider, however, that section 944.47(1)(c) dispossesses an inmate's right to defend himself against the peril of death or serious bodily injury, even to the extent of removing the offending weapon from the hands of the would-be aggressor.
Reversed and remanded for new trial.
ZEHMER, J., concurs.
BOOTH, J., dissents with written opinion.
BOOTH, Judge, dissenting:
The trial court correctly sustained the State's objection to the evidence in question, stating:
THE COURT: Now, Mr. Replogle [defense counsel], you would have a more valid point if the Defendant had surrendered the knife to the officers after the officers had gotten in there and had Williams *296 under complete domination and control.
Now, I must not let the fact about whether I believe or not believe that Williams [victim of stabbing by defendant] had this knife influence me.
But when and if it had been limited solely to a situation in which a knife from another had been secured by an accused and then surrendered when the officers got there, you may have had a more valid legal status.
But to permit this Defendant's theory of defense would turn what is already a bad situation in the prisons of Florida into an absolute dangerous jungle of armed criminals slashing and killing other human beings.
Now, this Defendant, Harry Mungin, had administrative remedies. He didn't tell Officer Smith of any difficulty that he was having, if any. And then he would not turn the weapon over until he got ready to, which he identified as being the time when the officers cleared the day room.
This proffered defense cannot be justification for the possession of a weapon.
The objection of the State is sustained.
The judgment of conviction should be sustained.

ON MOTION FOR REHEARING AND REHEARING EN BANC
ERVIN, Chief Judge.
The appellee, state of Florida, has filed motions for rehearing and rehearing en banc, urging that this court erred in releasing its opinion filed April 6, 1984, which recognized that the defense of self-defense, or necessity and duress, was, under the unique circumstances presented by this case, permissible. The state urges that this court's opinion conflicts with its prior opinions in Carter v. State, 312 So.2d 494 (Fla. 1st DCA 1975), and Dardy v. State, 324 So.2d 178 (Fla. 1st DCA 1975), and therefore rehearing en banc should be granted pursuant to the provisions of Florida Rule of Appellate Procedure 9.331. The full court has considered the motion for rehearing en banc and has granted it in part insofar as the opinion conflicts with that in Carter, but otherwise adheres to the original opinion, as modified.
We agree that our former opinion requires clarification. Omitted from it was the fact that Williams himself was the victim of three stab wounds by appellant during the altercation. Appellant, however, as previously stated, was only tried on a charge of inmate possession of a weapon, as proscribed by Section 944.47(1)(c), Florida Statutes. Omitted also from the opinion were the lower court's comments explaining its denial of the proffered defense. The lower court, somewhat inconsistently, apparently accepted the view that the defense of necessity might be appropriate under certain circumstances, but found it inapplicable to the facts before it, saying, "I am putting out of my mind the believeability of that defense. That is up to the jury. But in this case, because he [the defendant] has testified that he would not surrender the weapon until he got ready to, this defense is not applicable and the objection is sustained."
Obviously the court's interpretation of the defense was incorrect. The defense of necessity or duress was either available to the defendant or it was not. If it was one recognized by law then the jury had the right to weigh the credibility of the explanation offered by the defendant as to why he did not immediately hand over the knife, particularly in view of his proffered testimony that he had been attacked not only by the victim Williams but by other hostile inmates, and had finally agreed to surrender the knife when all were removed from the room. Clearly, if the defense is available, the jury  not the judge  has the right to decide whether the explanation is reasonable. See Hall v. State, 136 Fla. 644, 187 So. 392 (Fla. 1939); Stevens v. State, 397 So.2d 324 (Fla. 5th DCA 1981).
The state argues, however, that the defense is not available under any circumstances and relies, as stated, on this court's opinions in Dardy v. State and Carter v. State. We are not persuaded that the facts in Dardy control those before us. *297 Those facts reveal a felon's conscious, intentional decision to possess a firearm, a decision which was reflected on for some time in advance of the actual possession. Nevertheless, the blanket statement of law espoused in Dardy, holding that "self-defense is not a viable defense to the offense of possession of a firearm by a convicted felon", and its reliance on Carter for such holding, is not in accord with what we have held in Mungin.
We have previously expressed our concern as to whether the Carter panel intended its holding to extend to an inmate's temporary possession of a weapon under circumstances revealing that he himself was the victim of aggression. Regardless of our reservations, we agree with the state's argument that Carter does express an applicable rule of law in that it states: "To grant judicial sanction to the otherwise unlawful possession of a deadly weapon by prisoners, whatever the reason would undoubtedly result in murder, mayhem and utter chaos throughout our entire penal institutions, with which authorities would be unable to cope." Id. at 494 (e.s.). On further reflection, a majority of the full court now agrees that the reach of Carter could extend to the very factual situtation now before us  the temporary possession of a weapon even when used to defend an inmate against the imminent peril of death or serious bodily injury. To the extent that the Carter and Dardy opinions so hold, we recede from them, adhering to our original opinion that section 944.47(1) does not bar the temporary possession of a weapon taken from the possession of a would-be aggressor when it is used to defend the attacked inmate against the imminent peril of death or serious bodily injury.[1]
The motions for rehearing and rehearing en banc are otherwise denied.
ERVIN, C.J., and SMITH, SHIVERS, WENTWORTH, JOANOS, WIGGINTON and ZEHMER, JJ., concur.
BOOTH, J., dissents, with MILLS, THOMPSON and NIMMONS, JJ., concurring.
NIMMONS, J., dissents, with MILLS, BOOTH, THOMPSON and BARFIELD, JJ., concurring.
BOOTH, Judge, dissenting:
I respectfully dissent and would adhere to the law as stated by this Court in Carter v. State, 312 So.2d 494 (Fla. 1st DCA 1975), wherein this Court held:
Appellant here seeks our judicial approval of his possession of a deadly weapon while a prisoner, allegedly for the purpose of protecting himself against other inmates. While there is a narrow defense of necessity available to a prisoner whose escape has been motivated by sufficiently perilous circumstances such a defense has not been extended to the possession of deadly weapons. To grant judicial sanction to the otherwise unlawful possession of a deadly weapon by prisoners, whatever the reason, would undoubtedly result in murder, mayhem and utter chaos throughout our entire penal institutions, with which authorities would be unable to cope.
The trial court in the instant case correctly applied the law as stated in Carter and refused to "try the fight between the defendant and Williams." The trial court further indicated that if defendant had turned over the knife to the officers when they asked for it after arrival on the scene, the proffered evidence would have been admitted, but stated: "By setting up his [defendant's] own conditions and holding the knife until the officers complied, no, he cannot [claim self-defense]."
Defendant here, by his own testimony, used the knife to stab another inmate three times. Further, the testimony is uncontradicted that, when the officers arrived and asked him to relinquish the knife, he refused to do so until other inmates were removed from the room. For these reasons, *298 defendant cannot claim that his possession of the knife was merely temporary and involuntary or inadvertent, matters which would bear on whether the State has established "possession."[1]
The majority view is a departure from the existing rule that necessity, including self-defense, is no defense to possession of a weapon by a prisoner. Carter v. State, supra. To recognize this defense is to permit prisons to become armed camps since all that need be shown by an inmate in order to defend his possesssion of a weapon is that he fears attack from other inmates.
This Court's opinion in Carter v. State, supra, is quoted with approval in State v. Morbeck, 22 Wash. App. 404, 589 P.2d 823, 824 (1979), wherein the court affirmed an inmate's conviction for unlawful possession of a weapon and the trial court's refusal to allow evidence that defendant's possession of the weapon was necessary to protect himself against another inmate, holding:
The purpose of [the statute] insofar as it prohibits inmates from possessing weapons, is to protect custodial officers and other prisoners from assaults with dangerous weapons by armed prisoners... . The statute does not make the intent with which the weapon is possessed an element of the offense. (emphasis added)
The rule disallowing the defense of self-defense also applies to possession of a weapon by a convicted felon. In Coleman v. State, 345 So.2d 1093 (Fla. 4th DCA 1977), the State proved that defendant was a convicted felon and that he had possession of a firearm, contrary to Section 790.23, Florida Statutes. Defendant then sought to establish that, in self-defense, he shot a burglar who had attacked him with a crowbar. In affirming the conviction, the court held (345 So.2d at 1094):
Evidence justifying the defendant's use of the firearm would be irrelevant and immaterial. The defendant is not charged with shooting the burglar; he is charged, as a convicted felon, with the unlawful possession of a firearm. The statute makes it a crime for a convicted felon to possess a firearm. There is no exception made for the convicted felon who believes he may need a firearm for self-defense. The defendant violated the statute by being in possession of a firearm. His subsequent use of the firearm in self-defense does not excuse or justify his initial violation of the statute. We hold that the trial court correctly disallowed the proffered testimony. (emphasis added)
In the instant case, as in Coleman, defendant was not charged with stabbing the other inmate (an offense to which the proffered evidence would be relevant), but with possession of the knife, a possession that continued even after the stabbing.
This Court, in Thorpe v. State, 377 So.2d 221, 223 (Fla. 1st DCA 1979), affirmed defendant's conviction of attempted possession of a firearm by a convicted felon even though there was evidence that defendant had managed to wrest possession of the gun from a thief, who had accosted him, and held:
In Coleman v. State, 345 So.2d 1093 (Fla. 4th DCA 1977), the court squarely held that self defense is not available as a defense to the crime charged under this statute. There is, as that court put it, under the statute simply "no exception made for the convicted felon who believes he may need a firearm for self-defense". Although the factual circumstances differ, the principle expressed in the Coleman case is, we believe, equally applicable to the case at bar. Although we acknowledge that this application of the law may in some instances produce what would seem to be a harsh result, nevertheless, we align ourselves with the Fourth District and hold that the evidence produced was sufficient to support the conviction of appellant in this case.
This Court should adhere to its prior decision and affirm the conviction below.
*299 NIMMONS, Judge, dissenting.
It was undisputed, indeed Mungin admitted the same during his testimony, that he initially refused to surrender the knife to Sergeant Marshall, a correctional officer, upon the latter's demand therefor. Regardless of whether Mungin's possession prior thereto was unlawful, it certainly was at that point. And even his "temporary" possession thereafter is sufficient. See McKinney v. State, 428 So.2d 322 (Fla. 1st DCA 1983). I, therefore, agree with the trial judge that what had transpired prior thereto was irrelevant. Even if I were to agree with the majority that we should recede from Carter, I would not do so in this case.
NOTES
[1] Section 944.47(1)(a)5 and (c), Fla. Stat. provides:

(1)(a) Except through regular channels as authorized by the officer in charge of the correctional institution, it is unlawful to introduce into or upon the grounds of any state correctional institution, or to take or attempt to take or send therefrom, any of the following articles which are hereby declared to be contraband for the purposes of this section, to wit:
* * * * * *
5. Any firearm or weapon of any kind or any explosive substance.
* * * * * *
(c) It is unlawful for any inmate of any state correctional institution or any person while upon the grounds of any state correctional institution to be in actual or constructive possession of any article or thing declared by this section to be contraband, except as authorized by the officer in charge of such correctional institution.
[1] We have previously recognized that the defense of duress or necessity may be an appropriate defense to a charge of introducing contraband into a state prison, Moyers v. State, 400 So.2d 769 (Fla. 1st DCA 1981), although we there held it inapplicable because the proffered testimony was not sufficiently detailed to determine whether it tended to show duress in fact.
[1] Jones v. State, 325 So.2d 436, 438 (Fla. 1st DCA 1976); Nickerson v. State, 417 So.2d 762, 763 (Fla. 4th DCA 1982).